UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
JOE BETTENCOURT BORGES and
MARIA ROCHA BORGES, D/B/A
J&M DAIRY,
    Debtors.                                                 Case no. 11-10-12800-NLJ

AG NEW MEXICO, FCS, FLCA,
AG NEW MEXICO, FCS, PCA, and
AG NEW MEXICO, FCS, ACA,
    Plaintiffs,

v.                                                            Adv. No. 10-1170-NLJ

JOE BETTENCOURT BORGES and
MARIA ROCHA BORGES,
    Defendants.

JOE BETTENCOURT BORGES and
MARIA ROCHA BORGES,
    Plaintiffs,

v.                                                            Adv. No. 11-1012-NLJ

AG NEW MEXICO, FCS, FLCA,
AG NEW MEXICO, FCS, PCA, and
AG NEW MEXICO, FCS, ACA,
    Defedants.

JOE BETTENCOURT BORGES and
MARIA ROCHA BORGES,
    Plaintiffs,

v.                                                            Adv. No. 11-1105-NLJ

NAT'L MILK PRODUCERS FEDERATION
D/B/A/ COOPERATIVES WORKING TOGETHER
AG NEW MEXICO, FCS, FLCA,
AG NEW MEXICO, FCS, PCA, and
AG NEW MEXICO, FCS, ACA,
    Defendants.

## MEMORANDUM OPINION ON DEFENDANTS'
## MOTION TO TAX COSTS AND VERIFIED BILL OF COSTS

This matter is before the Court on Defendants[1]' Motion to Tax Costs and Verified Bill of Costs (doc 204)("Motion"), and the objection thereto filed by the Plaintiffs[2] (doc 208). Defendants are represented by their attorneys Arland & Associates, LLC (William J. Arland, III and Karla K. Poe). Plaintiffs are represented by their attorneys the Rowley Law Firm (Richard F. Rowley, II and Richard F. Rowley, III) and Linda S. Bloom, PA (Linda S. Bloom). This is a core proceeding. 28 U.S.C. § 157(b)(2). For the reasons set forth in more detail below, the Court finds that the Motion to Tax Costs must be denied.

The Motion relates to a trial conducted by Judge James S. Starzynski[3], now retired, during the late summer of 2012. In December, 2012 Judge Starzynski issued a Memorandum Opinion[4] and Judgment. Both Plaintiffs and Defendants have appealed the rulings to the Tenth Circuit Bankruptcy Appellate Panel. A bankruptcy court retains jurisdiction after an appeal is filed, however, to award costs under Bankruptcy Rule 7054. *Roth v. Mims*, 298 B.R. 272, 299 (N.D. Tex. 2003).

---

[1] Although the Debtors were the plaintiffs in two of the adversaries, throughout this Memorandum "Defendants" will refer to the Debtors, Mr. and Ms. Borges.

[2] The term "Plaintiffs" will refer to the three related federally chartered agricultural lenders 1) AG New Mexico, FCS, FLCA, 2) AG New Mexico, FCS, PCA and 3) Ag New Mexico, FCS, ACA. Although the National Milk Producers Federation appears in the caption it was no longer involved in the matters at issue.

[3] Before filing this Memorandum Opinion, the undersigned judge filed a Certification of Familiarity with the Record Pursuant to Bankruptcy Rule 9028. *See Canseco v. United States*, 97 F.3d 1224, 1227 (9th Cir. 1996).

[4] The memorandum opinion ("*Memorandum*") appears at 485 B.R. 743 (Bankr. D. N.M. 2012).

Page -2-

Case 11-01105-nlj    Doc 85    Filed 05/02/13    Entered 05/02/13 11:17:50 Page 2 of 9

## LAW REGARDING AWARD OF COSTS

Bankruptcy Rule 7054(b) governs the award of costs to a prevailing party in an adversary proceeding in bankruptcy court. That rule provides, in relevant part:

> (b) Costs
> The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.

Fed.R.Bankr.P. 7054(b). This rule differs from the corresponding rule that applies in civil cases in the United States District Courts. That rule provides, in relevant part:

> **(1) Costs Other Than Attorney's Fees.** Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.

Fed.R.Civ.P. 54(d)(1).

A comparison of the two rules makes it obvious that costs are presumptively awarded to prevailing parties in civil cases, but an award of costs in bankruptcy cases is discretionary. *Compare Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir.), *cert. denied*, 516 U.S. 810 (1995)("This court has held that Rule 54(d) creates a presumption that the prevailing party shall recover costs.")(Citation omitted) *and In re Williams Securities Litigation - WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) ("[T]he district court must provide a valid reason for denying such costs,") (Citations and internal quotation marks omitted) *with Northwestern Corp. v. Margin Asset Mgt. Corp. (In re Northwestern Corp.)*, 326 B.R. 519, 529 (Bankr. D. Del. 2005), *aff'd.*, 369 B.R. 775 (D. Del. 2007)("It is clear an award of costs under Rule 7054(b) is discretionary.")(Citation omitted.) *and In re Nichols*, 221 B.R. 275, 280 (Bankr. N.D. Okla. 1998)(Same) *and Turner v. Davis, Gillenwater & Lynch (In re the Investment Bankers, Inc.)*, 135 B.R. 659, 670 (Bankr. D. Colo. 1991), *aff'd.*, 161 B.R. 507 (D. Colo. 1992), *aff'd.*, 4 F.3d 1556

Case 11-01105-nlj   Doc 85   Filed 05/02/13   Entered 05/02/13 11:17:50   Page 3 of 9

(10th Cir.), *cert. denied*, 510 U.S. 1114 (1993)("[T]here is no presumption that costs be taxed to the unsuccessful party.")(citing 9 Collier on Bankruptcy, ¶ 7054.07 at p. 7054-8 (15th ed. 1990).

The bankruptcy courts that recognize their discretion also find that the grounds for which they should award costs are within their discretion. *See In re Clansy*, 2008 WL 177779, at *3 (Bankr. S.D. Tex. 2008)(The court considers factors such as bad faith by the prevailing party in incurring unnecessary costs and the inability of a losing party to pay the prevailing party's costs.); *Northwestern Corp.*, 326 B.R. at 531 ("[T]he complaint was not filed in bad faith, nor for vexatious or harassment purposes, but rather to preserve the integrity of the reorganization process." No costs were awarded.); *V.M. v. S.S. (In re S.S.)*, 271 B.R. 240, 243 and 248 (Bankr. D. N.J. 2002)(Court awards nondischargeability plaintiff his costs in obtaining judgment from the defendant/debtor who had committed fraud on the state court by obtaining paternity and child support orders knowing that plaintiff was not the father.); *Nichols*, 221 B.R. at 280 (Court declined to award costs because it found lack of subjective bad faith or wanton, vexatious or opressive conduct.); and *Investment Bankers, Inc.*, 155 B.R. at 670-71. In declining to award costs, the court stated:

> The findings and conclusions made by each of the various courts involved in this proceeding to date substantiate Defendants' contention that the legal and factual issues underlying the parties' litigation are significant, have been hotly contested, and clearly are subject to legitimate differences in opinion. There is no evidence in the record that Defendants' pleadings or arguments have been frivolous or raised in other than good faith defense to the Trustee's claims, notwithstanding the ongoing delays in finally pursuing those defensive arguments with evidence at trial.

In summary, the bankruptcy court will award prevailing party costs only if there is some reason that tips the scales toward the prevailing party other than simply the fact that that side

won. In other words, either the losing party was a bad actor or the plaintiff ran up its costs in bad faith.

## REQUIREMENT THAT THERE BE A PREVAILING PARTY

The award of costs is conditioned on the person seeking the costs being the "prevailing party." Fed.R.Bankr.P. 7054(b). *See Baker v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1233-34 (10th Cir. 2001)("As is apparent from the language of Rule 54(d)(1), the determination of who qualifies as a prevailing party is central to deciding whether costs are available.")(Citing Wright & Miller, *Federal Practice & Procedure*, § 2667).

In the Tenth Circuit there can be only one prevailing party. *Baker*, 254 F.3d at 1234 (The magistrate judge ruled that both the plaintiff and defendant were prevailing parties because each side obtained some relief. The Tenth Circuit vacated the cost awards and remanded to determine which of the parties had, in fact, prevailed. The Tenth Circuit also noted that costs awards are subject to broad discretion and if one party was only partially successful the costs could be apportioned or reduced, or denied altogether if neither side truly prevailed.) *Accord Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010)("In our view, the plain language of Rule 54 unambiguously limits the number of prevailing parties in a given case to one because the operative term, 'prevailing party' is singular."); *Hillside Enter. v. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995)(If the amount of plaintiff's judgment is larger than the amount of defendant's judgment on the counterclaim, the plaintiff is the prevailing party.")

## DISCUSSION

The Court finds that the Motion should be denied for two reasons. First, the Court finds nothing in the record and no finding by the prior (trial) judge that Plaintiffs engaged in any of the

Case 11-01105-nlj    Doc 85    Filed 05/02/13    Entered 05/02/13 11:17:50    Page 5 of 9

types of behavior that would justify a cost award against them. There is also no suggestion that Defendants filed anything in bad faith or ran up their costs. Second, the Court finds that Defendants are not the prevailing parties.

First, in the *Memorandum* Judge Starzynski repeatedly cited to the good faith demonstrated by Plaintiffs and the reasonableness of their requirements and actions. *See, e.g. Memorandum*, 485 B.R. at 767:

> In consequence, AGNM's actions to collect the maximum amount it could from the collateral it indisputably retained rights in were reasonable, and thus the affirmative defenses or counterclaims that require some sort of malfeasance or misfeasance on the part of AGNM cannot stand.

*Id.* at 769:

> AGNM (and probably the Borges' originally) never intended to have AGNM only partially secured, and so AGNM acted reasonably in attempting to put itself in a position of having $2.67 million of collateral value (even assuming the remaining collateral was that valuable) securing a repayment obligation of $1.8 million, for a loan to value ratio of roughly 1 to 1.5.
> ...
> In summary, then, AGNM was acting reasonably in attempting to protect its collateral position by not agreeing to permit the Borges' to keep $1.3 million or so of the sale proceeds. Thus, any cause of action that requires a finding that AGNM was acting in bad faith by insisting on receiving all the proceeds must fail. That would at a minimum apply to the counterclaims of lack of good faith and fair dealing (counter claim count 2) and prima facie tort (count 10).
> ...
> [AgNM] could, and ultimately did, insist reasonably that it receive all the proceeds.

*Id.* at 770:

> [T]he evidence is simply not there that AGNM acted unreasonably in the circumstances.

*Id.* at 771:

> As cold as that result might be, the fact is that AGNM had no obligation to put any part of its recovery at risk in order to in effect provide support for Ms.

Borges or to assure that her other creditors were paid. Ms. Borges has cited no authority that holds otherwise, and the Court is not aware of any either.

*Id.* at 779:

> What is relatively clear from a review of all the evidence is that there was no breach of good faith or fair dealing. First, the terms of the notes and security documents are, for the most part, quite clear. The lending and repayment arrangements—the heart of relationship between Borges' and AGNM—are reasonably explicit, including the use of the collateral proceeds to repay debt. Enforcing those requirements does not violate the covenants of good faith and fair dealing. Throughout AGNM sought to protect its own interests (and even at times had the attitude of facilitating Ms. Borges' attempts to work things out); at no time did it seek to deprive Ms. Borges of some contractual benefit, implicit or explicit, to which she was entitled.

(Footnotes omitted.) *Id.* at 780:

> And to be clear, the Court rejects the claim that AGNM hoped to torpedo the Corley transaction with Ms. Borges in order to obtain the cattle, sell them for a higher price, and at the same time realize the full value of the real estate pledged to it, so as to recover as much as $14 million for a $9.4 million debt. That scenario is incredible[.]

Regarding the Defendants' three counter-claims for interference with contract, the Court noted that New Mexico law in this area allows an exception to liability: "If one is protecting their own legally protected interest which they believe may be impaired or destroyed by performance of the contract, they are privileged to interfere." *Id.* at 783. "AGNM was justified and privileged to assert its rights to receive all the net sale proceeds." *Id.* at 788:

> After reviewing the evidence, the Court concludes that AGNM did not knowingly make any false representations to Ms. Borges in connection with the facility loan. Borges' claim under the UPA is therefore dismissed.

*Id.* at 790:

> Before addressing the specific allegations made by the Borges' relating to this count [prima facie tort], the Court first makes the overall observation that

Page -7-

>   from the evidence presented at the trial of this matter the Court is unable to find
>   that AGNM intended to injure the Borges'.

Id. at 790-91:

>   ...
>   However, in addition to finding a lack of intent to injure, the Court finds that most, if not all, actions taken by AGNM were justifiable, justified, and generally not culpable. Some actions taken were specifically authorized in the written agreements between the parties. Some actions were imposed on AGNM by its regulatory agency. Some actions taken were ordinary and customary business practices in the industry. It is truly unfortunate that Ms. Borges ended up in the situation in which she finds herself. But, nothing done by AGNM caused the economy to crash or [ ] the price of feed to rise or the demand and price for milk to drop. Those are the events primarily responsible for Ms. Borges' problems. AGNM was not a guarantor of a good economy.

and Id. at 792:

>   "AGNM has clean hands."

(Footnote omitted.)

Defendants did have a few valid objections to Plaintiffs' behavior. One, the refiling of the mortgage, looks sinister. In fact, however, the refiling was declared ineffectual by the bankruptcy court and caused no harm. Furthermore, there appears to be no New Mexico caselaw directly on all fours with the exact issue and one cannot say that AGNM acted maliciously. Another, the failure to apply suspense account payments, was troubling. Again, however, this resulted in no damages and the evidence did show an attempt by the Plaintiffs to call attention to the funds in this account which was not responded to. Judge Starzynski classified these actions "not so much fraudulent or inequitable as they were mere contract violations." Id.

Second, the Court finds that Defendants were not the prevailing party. In terms of overall relief, the Plaintiffs obtained possession of the $4 million in the Court registry as proceeds of its collateral and obtained foreclosure on the dairy. Defendants defeated a mortgage on 220 acres

plus some water rights, but also obviously only due to a clerical error in the original recording of the mortgage. And, Defendants convinced the Court that it was improper to sit on the suspense account funds and to retroactively raise the interest rate. Overall, however, Plaintiffs are clearly the prevailing party. Therefore the Defendants are not entitled to prevailing party costs.

## CONCLUSION

The Court will enter an Order denying the Motion to Tax Costs.

Honorable Niles L. Jackson
United States Bankruptcy Judge

Entered on docket: 5/2/13

Copies to:

Linda S Bloom
PO Box 218
Albuquerque, NM 87103-0218

Richard F Rowley, II
Rowley Law Firm, P.C.
PO Box 790
305 Pile
Clovis, NM 88102-0790

George M Moore
Moore, Berkson & Gandarilla, P.C.
3800 Osuna Rd NE, STE #2
Albuquerque, NM 87109

201 Third Street NW, Suite 505
Albuquerque, NM 87102

William J Arland, III
PO Box 1089
Santa Fe, NM 87504-1357

Karla K Poe